## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

**DAVID STEBBINS**                                    **APPELLANT**

**VS.**                          **CASE NO. 13-3288**

**RHONDA WATKINS & STATE OF ARKANSAS**          **APPELLEE**

### APPELLANT BRIEFING

Comes now, *pro se* Appellant David Stebbins, who hereby submits the following Briefing in support of his appeal.

### TABLE OF CONTENTS

1. TABLE OF CONTENTS                                           1

2. TABLE OF AUTHORITIES                                        3

3. JURISDICTIONAL STATEMENT                                    5

4. STATEMENT OF ISSUES                                         6

5. STATEMENT OF THE CASE                                       7

6. SUMMARY OF ARGUMENT                                         10

7. ARGUMENT                                                    11

   (a) The District Court is clearly            11
biased against Appellant. There-
fore, the District Court's order
declining to recuse these judges
should be reversed.

   (b) Standard for summary dismissal           15

   (c) Necessity for judicial review             16

   (d) Appeal is impossible without a            18
case number to file a notice of appeal in.

   (e) Just as there can be no appeal            19
without a case number, nor can there

be a petition for writ of mandamus
without certified copies, which cannot
be obtained without a case number.

(f) In forma pauperis is a fundamental          20
right to the extent that it is necessary for
the protection of another fundamental
right, which appellate court access is.

(g) Even if damages were unavailable,          20
Appellant should still be entitled to equi-
table relief under the Stripping Doctrine.

(h) The District Court had no discre-          21
tion to disallow Appellant the chance
to amend his complaint once as a
matter of course.

(i) The mere fact that the amended          21
complaint states a new, unrelated cause
of action is not a valid grounds to block
a complaint amendment., and even if it
were, the new cause of action is sufficiently
related to the original one.

(j) Even if this were a valid grounds,          22
the amended complaint is entirely related
to the original complaint.

8.  STANDARD OF REVIEW                                    24

9.  CONCLUSION                                            24

# TABLE OF AUTHORITIES

The following legal authorities shall be cited in this briefing:

| Statutes & Rules | Page(s) |
| --- | --- |
| 28 USC § 1291 | 5 |
| 28 USC § 1915 | 12 |
| 42 USC § 1983 | 5,23 |
| 42 USC § 12203 | 5,23 |
| Ark. R. App. P. – Civ., Rule #3(b) | 7 |
| Fed. R. App. P. 4(a)(1)(A) | 5 |
| Fed. R. App. P. 26(a)(1)(A) | 5 |
| Fed. R. App. P. 28(a)(4) | 5 |
| Fed. R. Civ. P. 15(a) | 6,9,21 |
| Fed. R. Civ. P. 18(a) | 22 |

| Case Law | Page(s) |
| --- | --- |
| *Antoine v. Byers & Anderson, Inc.*, 508 US 429 (1993) | 14 |
| *Bell v. Wolfish*, 441 US 520 (1979) | 11 |
| *Boddie v. Connecticut*, 401 U.S. 371 (1971) | 16,20 |
| *Ex Parte Young*, 209 U.S. 123, 124 (1908) | 16,17,20 |
| *Foman v. Davis*, 371 US 178, 182 (1962) | 22 |
| *Fusco v. Xerox Corp.*, 676 F. 2d 332, 334 (8th Cir. 1982) | 15 |
| http://evans-legal.com/dan/tpfaq.html#purpose | 12 |
| *Knieriem v. Group Health Plan, Inc.*, 434 F. 3d 1058, 1060 (8th Cir. 2006) | 24 |

*Krentz v. Robertson Fire Protection District*, 228 F. 3d 897, 905 (8th Cir. 2000)      14

*Lambert v. California*, 355 U.S. 225 (1957)      14

*Lemonds v. St. Louis County*, 222 F. 3d 488, 492 (8th Cir. 2000)      17

*Maness v. Logan Co. Dist. Court*, 495 F. 3d 943 (8th Cir. 2007)      6,8,16,18,19,24

*Marbury v. Madison*, 5 U.S. 137 (1803)      16

*McCray v. State of Maryland*, 456 F.2d 1 (1972)      18

*Romer v. Evans*, 517 U.S. 620 (1996)      15

*Sentis Group, Inc. v. Shell Oil Co.*, 559 F. 3d 888, 899 (8th Cir. 2009)      15

*Shipp v. Todd*, 568 F. 2d 133, 134 (9th Cir. 1978)      20

*Tennessee v. Lane*, 541 U.S. 509 (2004)      9,23

*Williams v. Wood*, 612 F. 2d 982 (5th Cir. 1980)      18

# JURISDICTIONAL STATEMENT

The jurisdictional statement, as required by Fed. R. App. P. 28(a)(4), is as follows:

1. **District Court's Jurisdiction**: The District Court had jurisdiction over the original cause of action under 42 USC § 1983. It had jurisdiction over the amended complaint pursuant to 42 USC § 12132 and 42 USC § 12203.

2. **Appellate Court's Jurisdiction**: This Court has jurisdiction to hear this appeal. See 28 USC § 1291.

3. **Timeliness**: The District Court's order dismissing this case was entered on September 19, 2013. See Doc. 11. The 30-day time limit set forth in Fed. R. App. P. 4(a)(1)(A) began to run on September 20, 2013; see Fed. R. App. P. 26(a)(1)(A). The Notice of Appeal was filed on September 26, 2013 (see Doc. 12), well within the thirty-day time limit.

4. **Finality**: The District Court dismissed this complaint with prejudice; see Doc. 11. Therefore, it is a final decision beng appealed.

## STATEMENT OF ISSUES

1. Is there evidence to suggest the possibility that the District and Magistrate Judges' actions were based upon a personal dislike for Appellant due to his lawsuit-filing practices?

2. Does the case of *Maness v. Logan County District Court* bar any and all relief in this case?

3. Does Plaintiff have the right to injunctive relief under the stripping doctrine?

4. Does the District Court have discretion to refuse to allow a complaint to be amended pursuant to Fed. R. Civ. P. 15(a)?

5. Can a complaint be amended to include entirely new causes of action?

6. If they cannot, is it still the same cause of action if it is the exact same actions complained about, but relief demanded under a different statute?

## STATEMENT OF THE CASE

1.      After state judge Gordon Webb had taken a very very long time to rule on Appellant's applications for leave to proceed *in forma pauperis* in the Boone County Circuit Court, Appellant filed suit in the U.S. District Court for the Western District of Arkansas, claiming that the lack of a case number prevented Appellant from filing a Petition for Writ of Mandamus in the State court in order to force a ruling on the *in forma pauperis* applications.  That case was given Case No. 12-0704.

2.      When Gordon Webb, in wake of this filing, proceeded to dismiss all of Appellant's *pro se* complaints in the Boone County Circuit Court, denying the applications for leave to proceed *in forma pauperis* on the grounds that the complaints failed to state a "colorable cause of action," Appellant attempted to appeal those decisions in the state court system.  However, Appellant was prevented from doing so because the complaints, as well as the orders dismissing them, were *still* not given case numbers!

3.      Under Arkansas Rules of Appellate Procedure – Civil, Rule #3(b)[1] plainly states that an appeal is brought "by filing a notice of appeal with the clerk of the circuit court that entered the judgment, decree, or order from which the appeal is taken."  However, unless a case is opened up (which would necessarily mean that there would be case numbers), there is no way for Appellant to satisfy that requirement.

4.      Appellant visited the Boone County Circuit Clerks' Office, and consulted with Chief Deputy Clerk, Billie Christian.  She admitted that she was dumbfounded that there were no case numbers, and agreed to investigate.  Appellant asked her "Because how am I supposed to appeal those decisions…" and Christian finished Appellant's sentence for him by saying "without

---

[1]    This Court can view this rule by clicking on this web link: https://courts.arkansas.gov/rules-and-administrative-orders/court-rules/rule-3-appeal-%C2%80%EF%BE%94-how-taken

numbers? Right." In other words, the Defendants themselves have admitted that this omission has stripped Appellant of his right of access to the Appellate Courts.

5.      Appellant returned after a week and asked for an update on the promised investigation. Christian took Appellant to another deputy clerk, Carolyn Thomas, who informed Appellant that, because the *in forma pauperis* applications were denied, they were declining to open a case. When Appellant repeated his quest "Then how am I supposed to appeal those decisions," she simply replied "Well, I don't know."

6.      Frustrated by this, Appellant proceeded to do the only thing he could do: File suit in federal court. While doing so, Appellant gave a cover letter to the federal clerks, asking them to assign the case to a judge other than Holmes, as there was evidence to suggest that he and Magistrate Judge Marchewski had a bias against Appellant due to his litigation practices.

7.      Judge Holmes directed the Clerk to file it as a motion to recuse, and proceeded to deny that motion, simply stating that there was "no evidence" to show that he or the Magistrate Judge were biased in any way.

8.      The Magistrate Judge later issued a Report & Recommendation on Appellant's complaint, stating that the precedent of *Maness v. Logan County District Court* barred all relief that Appellant sought in the complaint (even the injunctive relief), and Appellant's attempts to distinguish the case were "unpersuasive" (but giving no details beyond that).

9.      Appellant objected to the report & recommendation, alleging the following:

(a)      The State law that places the burden for perfecting an appeal on the appellant in total is unconstitutional insofar as an appeal is impossible without the cooperation of the Clerks.

(b)      There were no state remedies available to Appellant. That is why he was filing suit in federal court.

(c)     The U.S. Supreme Court has already held that *in forma pauperis* is a right if the relief being sought is a fundamental right.

(d)     The Clerks were not entitled to immunity from injunctive relief under the Stripping Doctrine.

10.     Appellant also filed a motion to amend complaint under Fed. R. Civ. P. 15(a), alleging …

(a)     He had discovered that Billie Christian's confusion as to the lack of case numbers was not due to her inexperience with the position; instead, it was due to the fact that they did not often do that. Most cases receive case numbers, and Appellant was given *special treatment* by being deprived of case numbers.

(b)     Appellant determined that the most likely cause of this special treatment was, just like with the Federal District Judges, frustration with Appellant's litigation practices.

(c)     Most of Appellant's lawsuits were for disability discrimination, which places them within the protection of Section 503 of the Americans with Disabilities Act.

(d)     This placed the matter squarely within the precedent of *Tennessee v. Lane*, thus allowing the State of Arkansas to be included as a party.

11.     On September 19, 2013, Judge Holmes issued an order, stating the following:

(a)     The Magistrate Judge's Report & Recommendation was to be adopted in full (no reason why; it just was).

(b)     He felt that Appellant could obtain relief in the state courts if he petitioned the State Supreme Court for a writ of mandamus. Therefore, even injunctive federal relief was barred.

(c)     The amended complaint would be disallowed because it stated "an entirely new claim."

12.     This appeal ensued.

## SUMMARY OF ARGUMENT

1.      There is definitely evidence to suggest that the District Court may be exercising its

decision-making with a hint of personal frustration against Appellant for his litigation practices.

Therefore, the fact that it was even *these* judges making the decision in the first place was a

violation of Appellant's rights.

2.      The State law that puts the burden of perfecting an appeal on the appellant in total is

unconstitutional insofar as appeal is impossible without the cooperation of the Clerks.

3.      Appeal is impossible without a case number to file a notice of appeal in.

4.      Just as there can be no appeal without a case number, nor can there be a petition for writ

of mandamus without certified copies, which cannot be obtained without a case number.

5.      In forma pauperis is a fundamental right to the extent that it is necessary for the

protection of another fundamental right, which appellate court access is.

6.      Even if damages were unavailable, Appellant should still be entitled to equitable relief

under the Stripping Doctrine.

7.      The District Court had no discretion to disallow Appellant the chance to amend his

complaint once as a matter of course.

8.      The mere fact that the amended complaint states a new, unrelated cause of action is not a

valid grounds to block a complaint amendment, and even if it were, the new cause of action is

sufficiently related to the original one.

## ARGUMENT

For all of the reasons set forth below, the judgment of the District Court should be vacated, and the case remanded with instructions to try the case on the merits.

### District Court's bias.

1.	First and foremost, it is imperative to understand that the District and Magistrate Judges who personally dismissed this action clearly have a personal grudge against Appellant. They have previously openly confessed to their frustration with Appellant's lawsuit practices, and have issued orders stripping Appellant of court access unless he agrees to starve himself[2].

2.	They have subsequently proceeded to rule in Appellant's disfavor for the most arbitrary reasons imaginable, including, but not limited to, the following:

(a)	While incarcerated, Appellant was deprived of his free speech rights because he was being punished for his crime … a crime he was not even convicted of! See Doc. 84 of Case No. 12-3022. When Appellant objected, citing the precedent of *Bell v. Wolfish*, 441 US 520 (1979) to show that it was unconstitutional to punish Appellant unless he had been convicted (See Doc. 92 in the same case), Judge Holmes proceeded to throw Appellant's case out anyway (see Doc. 103 in the same case), not because the evidence presented by the Defense left no genuine dispute of material fact, but simply on the completely arbitrary grounds that, if the jail guards had to have the same "tough skin" to harsh words that any other citizen is expected to have, it would put them at an "obvious security risk." No proof… no evidence… no explanation as to exactly *what kind of* security risk… no opportunity for Appellant to respond to this newly-raised argument… no nothing! Clearly, both of these arbitrary findings of fact pulled from literally out of nowhere had nothing to with an impartial adjudication on the

---

[2]	As established in the Briefings in Case Nos. 13-2689 & 13-2687, the District Court did not account for Appellant's food allowance when deciding what Appellant can afford to pay for a lawsuit.

merits, and everything to do with simply throwing Appellant's case out because they don't like Appellant.

(b)    In Case No. 12-3130, Judge Holmes dismissed Appellant's attempt to direct and receive compensation for the arbitrary use of his name and social security number, and enjoin future such actions, on the grounds that Appellant's belief that he has the right to control such use is "frivolous."  Although he could just as easily have dismissed the case on the grounds that it was erroneous under 28 USC § 1915(e)(2)(B)(ii), Holmes declined to do that, instead opting to call the case full-blown "frivolous."  In other words, it goes beyond simply lacking merit, or Appellant making a mistake in his logic; instead, frivolous is the worst thing a lawsuit could possibly be classified as.

> "[W]hen a judge calls an argument 'ridiculous' or 'frivolous,' it is absolutely the worst thing the judge could say. It means that the person arguing the case has absolutely no idea of what he is doing, and has completely wasted everyone's time. It doesn't mean that the case wasn't well argued, or that judge simply decided for the other side, it means that there *was no other side.*. The argument was ***absolutely, positively, incompetent***. The judge is not telling you that you you were 'wrong.' The judge is telling you that you are out of your mind."[3]

(c)    In Case No. 12-3131, Judge Holmes also dismissed the case as "patently frivolous" (the previously-given excerpt regarding what "frivolous" means is applicable here as well), not because he found that Appellant had no right to assert, but simply because he was not satisfied with the level of detail in the complaint.  The complaint was plainly dismissed *with prejudice*, for a mistake (was it even a mistake in the first place?) that could easily have been corrected by simply amending the complaint.  At this point, Holmes is simply lying; the lack of detail is NOT the reason Holmes dismissed the case.  No honest and impartial judge would dismiss a case (and it bears repeating, here:  *with prejudice*) simply because the Plaintiff failed to read the judge's mind and know in advance how much detail the judge wanted to be

---

[3]    That excerpt comes from a legal treatise which can be viewed at the following weblink: http://evans-legal.com/dan/tpfaq.html#purpose

included, let alone give the case the elite status as "frivolous." No, instead, the REAL reason the Judges have dismissed that action simply HAS to be… something the judges cannot admit to out loud because it would result in career suicide; a bias against Appellant is the most obvious explanation to look to.

(d)    Even in this case, the Judges have engaged in a variety of arbitrary rulings without any logical basis behind them. Many of these will be discussed in depth in this brief, but a few did not result in any prejudice to Appellant and thus will not be mentioned outside this section. However, they still bear mentioning here, because they too demonstrate the judges' willingness to literally make things up to retrospectively justify their decision to deprive Appellant of court access that they had already made the decision to do, including …

i.    Magistrate Judge Marchewski, in Doc. 14 of the District Court's version of this case, recommended that Appellant be charged a filing fee "pursuant to the Prison Litigation Reform Act." Appellant was plainly not incarcerated. Judge Holmes found that it was simply a mistake, but how can it possibly be a mistake? This is more than a mere typographical error; to type the words "Prison Litigation Reform Act" requires a total of 35 keystrokes: 28 letters, 3 spaces, and 4 times the shift key is held down to get capital letters. Even if we were to assume that 35 consecutive errors went unnoticed by the Magistrate Judge, if they really were errors, they logically should have been random gibberish, like monkeys on a typewriter. The fact they these 35 consecutive errors not only told a coherent message, but said message lent credence to Appellant's preexisting theory, can only mean one thing: It was not a mistake; it was intentional.

ii.    When Appellant objected to the Magistrate Judge's recommendation on the grounds that an appeal is not frivolous simply because the appellant disagrees with the

district court (Doc. 15 in that case), Judge Holmes, although he declined to adopt the Report & Recommendation, stated that there were other cases passed since that precedent that dumbed the harshness of the precedent down significantly (Doc. 16 in that case). However, Judge Holmes never bothered to cite even one single solitary precedent that he seemed to be referring to, almost as if – you guessed it – there weren't any actual cases he was referring to, and again, he was simply making things up to justify his predetermined opinion.

3.    Appellant is already currently appealing the judges' refusal to recuse themselves because of this obvious bias they have against Appellant.  That appeal has been given Case No. 13-2548. As far as *this* appeal is concerned, however, the Judges' bias against Appellant means two things:

(a)    The judgment should be vacated simply on the grounds that the Judges should have recused themselves, but declined to do so.  Appellant never got a fair hearing in the first place, and that is a mistake that singlehandedly warrants reversal of the decision.  "The right to a fair and impartial decisionmaker forms an essential part of the protection afforded by the Due Process Clause." See *Krentz v. Robertson Fire Protection District*, 228 F. 3d 897, 905 (8th Cir. 2000).

(b)    While findings of fact from the District Court are typically reviewed for clear error, all the District Court's findings of fact in this case should nevertheless be taken with a grain of salt.  After all, the precedent that district court findings of fact be reviewed for clear error is based on the prerequisite assumption that the judges and/or jurors were impartial. When the justification behind a law is absent, the law itself usually falls apart.  See *Antoine v. Byers & Anderson, Inc.*, 508 US 429 (1993) (declining to apply the common law doctrine of judicial immunity when the purpose for the doctrine is not served); see also *Lambert v.*

*California*, 355 U.S. 225 (1957) (declining to apply the common law doctrine of "*ignorantia juris non exusat*" when the justification for the doctrine – universal availability of the law to all people – is not present); see also *Romer v. Evans*, 517 U.S. 620 (1996) (holding a law unconstitutional when it failed to serve – in any way, shape, or form – the purpose it was supposed to serve).

4.     Please keep that in mind while we discuss the remainder of this appeal.

**Standard for pre-service dismissal of *pro se* complaint.**

5.     Regarding pre-service dismissal, before we begin to discuss whether the complaint should have been dismissed with prejudice, it is imperative that we understand what the standard is for pre-service dismissal.

6.     Dismissal of a case, especially with prejudice, before a plaintiff is given a chance to offer evidence, is not to be taken lightly.  "There is a strong policy favoring a trial on the merits and against depriving a party of his day in court."  See *Sentis Group, Inc. v. Shell Oil Co.*, 559 F. 3d 888, 899 (8th Cir. 2009).

7.     Because of this policy, pre-service dismissal should be done with great caution.

> "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. A complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations." See *Fusco v. Xerox Corp.*, 676 F. 2d 332, 334 (8th Cir. 1982) (internal quotations and citations omitted).

8.     With that established, we now ask ourselves … if every fact contained in Appellant's Complaint were 100% true, would Appellant be entitled to any relief, whatsoever?  The remainder of this brief will demonstrate that the answer to this question is "yes."

## Necessity for judicial review

9.     The District Court dismissed this action on the grounds that the precedent of *Maness v. Logan Co. Dist. Court*, 495 F. 3d 943 (8th Cir. 2007) (or simply "Maness" for short) barred all relief on the grounds of qualified immunity. *Maness* affirmed pre-service dismissal in part on the grounds that "Arkansas state courts have made it clear that the responsibility for perfecting an appeal rests on the appellant in total." See *id* at 945.

10.     This precedent is only applicable if it is constitutional. If the law is unconstitutional, the Clerks are obligated to disregard it.

> "The attempt of a State officer to enforce an unconstitutional statute is a proceeding without authority of, and does not affect, the State in its sovereign or governmental capacity, and is an illegal act, and the officer is stripped of his official character and is subjected in his person to the consequences of his individual conduct. The State has no power to impart to its officer immunity from responsibility to the supreme authority of the United States." See *Ex Parte Young*, 209 U.S. 123, 124 (1908).

11.     The federal courts have an obligation to review all laws to determine if they conflict with the U.S. Constitution, and strike them down if they indeed conflict. See *Marbury v. Madison*, 5 U.S. 137 (1803).

12.     Appellant has clearly requested the District Court to do exactly this. In both the pleading and the objection to the Magistrate Judge's Report & Recommendation, Plaintiff argued that the rule of the Circuit Court prohibiting them from affixing case numbers to cases where *in forma pauperis* was denied was unconstitutional under the precedent of *Boddie v. Connecticut*, 401 U.S. 371 (1971). Even if Appellant were NOT *pro se*, this counts as a clear argument to invoke the District Court's jurisdiction under *Ex Parte Young*.

13.     Instead, the District Court simply suggested that Appellant petition the State Supreme Court for a writ of mandamus to force a case number, and then went on to say that Appellant "is

in the wrong legal system, seeking the wrong relief."  Later in this brief, Appellant will explain

how this is not a plausible option.  However, in this section, he does not have to, because, again,

it is *Ex Parte Young* to the rescue:  "When the question of the validity of a State statute with

reference to the Federal Constitution has been first raised in a Federal court, that court has the

right to decide it **to the exclusion of all other courts**." See *id* at 124 (areas of interest bolded for

emphasis).  As you can clearly see, the District Court's reasoning that Appellant was "in the

wrong legal system" is plainly wrong.

14.     Theoretically, federal jurisdiction could be defeated on the grounds of the Rooker-

Feldman doctrine.  See *Lemonds v. St. Louis County*, 222 F. 3d 488, 492 (8th Cir. 2000) ("The

*Rooker-Feldman* doctrine forecloses not only straightforward appeals but also more indirect

attempts by federal plaintiffs to undermine state court decisions").  However, in the case of

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 US 280 (2005), the Supreme Court took

the opportunity to correct the lower courts on this issue, and clarified that "[t]he *Rooker-*

*Feldman* doctrine … is confined to … cases brought by state-court losers complaining of injuries

caused by state-court judgments rendered before the district court proceedings commenced and

inviting district court review and rejection of those judgments."  See *id* at 284.  A Plaintiff

complaining about a clerk's omissions depriving him of the opportunity to even *have* a state-level

appeal in the first place falls squarely outside the newly-clarified Rooker-Feldman doctrine.

15.     Furthermore, Plaintiff has clearly suffered an obvious, axiomatic prejudice as a result of

his denial of court access.

> "If plaintiff's allegations are true, it is clear that his constitutionally based right of
> access to courts has been violated. Of what avail is it to the individual to arm him
> with a panoply of constitutional rights if, when he seeks to vindicate them, the
> courtroom door can be hermetically sealed against him by a functionary who, by
> refusal or neglect, impedes the filing of his papers? Viewing plaintiff's complaint
> with the liberality customarily afforded pro se pleadings,it is unmistakably clear

from the face of the complaint that it sufficiently alleges that he was barred access to the courts. This denial of a constitutional right of momentous importance is redressable under section 1983." *McCray v. State of Maryland*, 456 F. 2d 1, 6 (4th Cir. 1972).

16.     Just on this reason alone, the decision of the District Court should be reversed and remanded.  Appellant is clearly NOT in the wrong legal system.

**Appellant could not appeal the Circuit Clerks' decision in this case.**

17.     The *other* reason the *Maness* precedent affirmed the District Court's pre-service dismissal of the complaint is "the appellant could have appealed the clerk's refusal of his petition within the state system but failed to take advantage of the remedies available to him."  See *id* at 945.

18.     Notice, there are TWO elements in that sentence that must be satisfied in order to justify pre-service dismissal under this precedent.  They are (1) the *existence* of a state-level remedy, and (b) the appellant's failure to take advantage of said remedy.

19.     Even if we are to assume, for the sake of argument, that the second criterion is established, the first one is not. Appellant only filed federal suit after thoroughly investigating the matter, and being told by both counsel, as well as the clerks themselves, that, as established in Paragraphs #4 – 5 of the Statement of Facts in this briefing, he had no remedies available to him except to simply bite the bullet and pay the filing fee.  There simply is no state remedy available to Appellant.  At all.  Period.

20.     Although the above paragraph may be a big pill for the federal judiciary to swallow, Appellant refers the Court to Paragraphs #5 – 8 of this Argument.  Additionally, see the persuasive precedent of *Williams v. Wood*, 612 F. 2d 982, 986 (5th Cir. 1980) ("[Defendant], of course, disagrees with these allegations. [Plaintiff] has, however, alleged facts that, if true, would overcome Wood's qualified immunity and would justify relief. We do not reflect any view as to the verity of his allegations").

21.     Therefore, the complaint cannot be thrown out summary simply on the grounds that Appellant failed to exercise any remedies that he simply does not have, *especially* when the creation of such remedies is the very goal of the complaint.  The validity of the precedent of *Maness v. Logan County District Court* is simply not applicable here, due the clear absence of the prerequisite facts upon which that precedent was based.

### No petition for writ of mandamus could have been filed.

22.     Judge P.K. Holmes used this as an excuse for adopting the Magistrate Judge's report and recommendation, in order to create the illusion that Appellant actually had state remedies available to him.

23.     This is simply not the case.  In order to file a petition for writ of mandamus, Appellant must present the AR Supreme Court with certified copies of the Circuit Court records.  However, Circuit Court Clerk's will not to provide certified copies until the case is filed.  In order to be filed, the case must be given a case number.

24.     Appellant raised this issue in the case of *Stebbins v. Steen*, Case No. 12-0704 in the U.S. District Court for the Eastern (as opposed to Western) District of Arkansas.  This case was mentioned in Marchewski's Report & Recommendation in Case Nos. 12-3130 & 12-3131, where he recommended that Appellant be prospectively denied court access.  Therefore, there is no way that Judge Holmes does not know about Appellant's argument on this issue.  Even if Judge Holmes disagrees with Appellant's factual allegations, Appellant once again refers this Court to Paragraphs #5 – 8 of this Argument.

25.     Besides, as established in Paragraph #13 of this Argument, the Supreme Court has plainly stated that Appellant can obtain relief in federal courts "to the exclusion of all other courts."

26.     Therefore, the District Court's attempts to create out of thin air a state remedy that Appel-

lant theoretically could use to obtain relief without invoking the federal courts is both completely

wrong as an issue of fact and entirely irrelevant as an issue of law.

***In forma pauperis* is a fundamental right when
appellate court access is conditional upon payment.**

27.     Appellant clearly has a "court access" right in the instant case.  Under the precedent of

*Boddie v. Connecticut*, 401 U.S. 371 (1971), conditioning court access upon the payment of a

filing fee is unconstitutional, especially when the relief sought cannot be obtained "without

invoking the State's judicial machinery." See *id* at 376.

28.     Here, the relief Appellant sought in the state courts – reversal of the trial judge's dismissal

of his complaints – cannot be obtained by other means except appeal.  If this court thinks that

there might be another way of Appellant obtaining this relief, he yet again defers the Court to

Paragraphs #5 – 8 of this Argument.

29.     Therefore, the payment of a filing fee in the trial courts in order to access the appellate

courts is in direct violation of the precedent of *Boddie v. Connecticut*, and should be federally

enjoined accordingly.

**The Stripping Doctrine still provides relief.**

30.     Even if damages are unavailable, Appellant should still be entitled to equitable relief

under the stripping doctrine.  See the persuasive precedent of *Shipp v. Todd*, 568 F. 2d 133, 134

(9th Cir. 1978) ("Appellee argues and we agree that the Civil Rights Act does not abrogate the

quasi-judicial immunity accorded him in the exercise of his judicial functions. That immunity,

however, is limited to actions for damages and does not extend to suits for injunctive relief," and

citing the precedent of *Ex Parte Young*).

31.     Since, as previously established, Appellant is clearly not "in the wrong legal system," the

District Court should have issued a determination on Appellant's entitlement to injunctive relief.

## Amendment to Complaint a matter of right.

32.     The District Court refused to allow Appellant to amend his Complaint.  A reason was given, but that does not matter.  It should have been allowed.

33.     Fed. R. Civ. P. 15(a) plainly allows a Plaintiff an opportunity to amend his complaint once "as a matter of course," as long as he does so no later than twenty-one (21) days after service of process on the defendants.

34.     Notice how the rule says "as a matter of course."  In other words, allowing one amendment during this time frame is an administrative and ministerial process.

35.     No matter what the reason is for the District Court disallowing the amended complaint, it does not matter.  Appellant had the right to amend it once, and he was within the time frame to do so.  It should have been allowed, and it does not get any simpler than that.

## The District Court's grounds for disallowing the
## amended complaint are without merit.

36.     The District Court's grounds for disallowing the amended complaint were that it stated "an entirely new claim."

37.     It is important to understand that the District Court cannot deny leave to file an amended complaint without any reason whatsoever.

> "The Court of Appeals also erred in affirming the District Court's denial of petitioner's motion to vacate the judgment in order to allow amendment of the complaint. As appears from the record, the amendment would have done no more than state an alternative theory for recovery.
>
> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules

require, be freely given. Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." See *Foman v. Davis*, 371 US 178, 182 (1962) (internal citations and quotations omitted).

38. Therefore, the District Court does in fact have to come up with something – ANYTHING – to facially justify its refusal to allow an amended complaint. Of all the potential reasons suggested to them by the *Foman* case, they chose to disallow the amendment on the grounds that it stated "an entirely new claim."

39. Even if we were to assume, for the sake of argument, that the amended complaint indeed does state "an entirely new claim," (more on that in the next section), that is simply not a grounds for disallowing an amended complaint. Fed. R. Civ. P. 18(a) plainly states that a party may join "as many claims as it has against an opposing party," and clearly states that the joined claims may be "independent or alternative." Clearly, the mere fact that the amended complaint stated "an entirely new claim" is not grounds for blocking anything, even if the District Court had discretion to deny it.

**The amended complaint was related to the original complaint.**

40. The District Court refused to allow Appellant to amend his complaint once as a matter of course, on the grounds that it stated "an entirely new claim."

41. Even assuming the District Court had the discretion to disallow the amended complaint (which they don't), and even assuming that the lack of relation to the original complaint was a valid grounds to disallow an amended complaint (which it isn't), you still cannot get around the simple, inescapable fact that, despite what Judge Holmes would love to believe, Appellant's amended complaint was very, very related to the original complaint.

42. The original complaint asserted that the Court Clerks had failed to affix case numbers to

the complaints, thus denying Appellant court access in violation of the Due Process Clause of the Fourteenth Amendment. The *amended* complaint built upon that, and asserted that, because this omission was not common, but done only to Plaintiff who was singled out for special treatment because Plaintiff had filed some ADA discrimination lawsuits in the past which they didn't like, their actions were also in violation of 42 USC § 12203. It also causes the case to fall squarely within the precedent of *Tennessee v. Lane*, , 541 U.S. 509 (2004), completely eliminating any question of sovereign immunity that may or may not arise out of a Section 1983 claim.

43.     As you can see, this is clearly NOT "an entirely new claim."  It is the exact same actions (or rather, inactions) on the Defendants' part.  The only thing that is added is that these inactions violated a statute different other than 42 USC § 1983.  This causes the amended complaint to fall squarely within the precedent of *Foman v. Davis*, which based its reversal of the inferior courts' decision, partly on the grounds that the amended complaint which was disallowed "would have done no more than state an alternative theory for recovery." See *id* at 182.

## Conclusion

44.     So, as you can see, the District Court's clearly biased dismissal of this case was erroneous and an abuse of their discretion (what little there was) in nearly every conceivable way.  It is clear that they don't care about allowing legitimate claims to enter their docket, because this is clearly a legitimate case.  It is abundantly clear that their dismissals are driven entirely by a desire to deny Appellant his legal rights.

## STANDARD OF REVIEW

Appellant will provide a table, listing all the issues which are briefed on appeal, a recommended standard of review, and the reasons for the standard of review.

| Issues briefed on appeal | Standard of review | Reason(s) for standard |
|---|---|---|
| Judges' refusal to disqualify themselves. | *De novo* | Although their finding that there was no grounds for disqualification is an issue of fact, we must nevertheless be weary of the possibility that this finding was in and of itself made with the desire to issue biased decisions in Appellant's cases. |
| Dismissal for failure to state a claim. | *De novo* | *Knieriem v. Group Health Plan, Inc.*, 434 F. 3d 1058, 1060 (8th Cir. 2006) |
| Applicability of *Maness v. Logan Co. Dist. Court* | *De novo* | Because it is a conclusion of law, and conclusions of law are reviewed *de novo*. |
| Most of the District Court's findings of fact, including the availability of state remedies and the availability of mandamus relief. | *De novo* | Since this is a pre-service dismissal upon failure to state a claim, all the facts are supposed to be considered to be true. Therefore, the mere exercising of authority to make findings of fact is reviewable *de novo*. |
| Finding that it had discretion to disallow an amended complaint filed once as a matter of course. | *De novo* | To make the finding that it even had discretion in the first place is an issue of law. |
| Finding that the amended complaint stated "an entirely new claim" | Clear error | This is a finding of fact... one the District Court DID have the authority to make. |
| The "entirely new claim" excuse was valid grounds to disallow an amended complaint. | Abuse of discretion | This should be obvious. |

## CONCLUSION

Wherefore, premises considered, Appellant respectfully hopes that the judgment of the district court be reversed and the case remanded with instructions to try both the original and amended complaints on their merits. So requested on this 27th day of November, 2013.

*/s/ David Stebbins*
David Stebbins
123 W. Ridge St.,
ATP D
Harrison, AR 72601
870-204-6516
stebbinsd@yahoo.com
